UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
DIAMANTE FRAZIER,                         :
                                          :
                    Petitioner.           :
                                          :
         - v. -                           :          S4 17 Cr. 364 (CS)
                                          :          19 Cv. 8738 (CS)
UNITED STATES OF AMERICA,                 :
                                          :
                    Respondent.           :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION
TO DIAMANTE FRAZIER'S MOTION TO VACATE HIS CONVICTION**


                                          GEOFFREY S. BERMAN
                                          United States Attorney for the
                                          Southern District of New York
                                          Attorney for the United States of America
                                          One St. Andrew's Plaza
                                          New York, New York 10007


ALLISON NICHOLS
MAURENE COMEY
JACQUELINE KELLY
SAMUEL RAYMOND
Assistant United States Attorneys
     - Of Counsel -

## Table of Contents

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................................... 2

    I.      The Offense Conduct ................................................................................................ 2

    II.     The Plea Agreement ................................................................................................. 3

    III.   The Guilty Plea Hearing .......................................................................................... 4

    IV.   The Sentencing Hearing ........................................................................................... 6

    V.    The Instant Motion ................................................................................................... 7

ARGUMENT ......................................................................................................................... 8

    I.      Frazier's Claim is Procedurally Barred ................................................................... 8

      A.   Applicable Law ..................................................................................................... 8

        1.   Section 924(c) ...................................................................................................... 8

        2.   Section 2255 ........................................................................................................ 9

      B.   Discussion ........................................................................................................... 12

        1.   Frazier Cannot Show Cause for or Prejudice from His Failure to Challenge his Count Fourteen Conviction on Direct Appeal ................................................... 13

        2.   Frazier Is Not Actually Innocent ....................................................................... 15

    II.     Frazier's Claim Fails on the Merits Because Assault with a Dangerous Weapon and Attempted Murder Are Crimes of Violence Under the Force Clause ....................... 16

CONCLUSION ..................................................................................................................... 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                :
DIAMANTE FRAZIER,                               :
                                                :
                          Petitioner.           :
                                                :
            - v. -                              :            S4 17 Cr. 364 (CS)
                                                :            19 Cv. 8738 (CS)
UNITED STATES OF AMERICA,                       :
                                                :
                          Respondent.           :
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

Defendant Diamante Frazier seeks to vacate his conviction entered on April 3, 2019, in the United States District Court for the Southern District of New York, following his guilty plea.

Superseding indictment S4 17 Cr. 364 (CS) (the "Indictment") was filed on September 12, 2018, against Frazier (the "defendant") and twelve other defendants. The fourteen-count Indictment charged Frazier with (1) racketeering conspiracy, in violation of Title 18, United States Code Section 1962(d) (Count One); (2) assault with a dangerous weapon and attempted murder in aid of racketeering activity, in violation of Title 18, United States Code, Sections 1959(a)(3), 1959(a)(5), and 2 (Count Two); (3) narcotics conspiracy, in violation of Title 21, United States Code, Section 841(a)(1), 841(b)(1)(A), and 846 (Count Three); and (4) brandishing and discharging firearms in furtherance of the Count Two attempted murder and the Count Three narcotics conspiracy, in violation of Title 18, United States Code, Sections 924(c) and 2 (Count Fourteen).

On October 17, 2018, Frazier pled guilty pursuant to a plea agreement with the Government (the "Plea Agreement"). Under the terms of the Plea Agreement, among other things, Frazier agreed to plead guilty to Count Three of the Indictment, charging him with participating in a

conspiracy to distribute narcotics and to brandishing firearms in furtherance of the narcotics conspiracy and to the attempted murder charged in Count Two, which was a lesser-included charge of Count Fourteen of the Indictment, and the Government agreed to dismiss the remaining charges in the Indictment. On April 2, 2019, the Court imposed a sentence of 36 months' incarceration on Count Three and 84 months' incarceration on Count Fourteen, to run consecutively, for a total of 120 months' incarceration, along with four years' supervised release and a $200 special assessment. Frazier is currently serving his sentence.

As discussed further below, Frazier has moved pursuant to 28 U.S.C § 2255 to vacate, set aside, or correct his sentence as to Count Fourteen, purporting to rely on *United States v. Davis*, 139 S. Ct. 2319 (2019). Because Frazier's Section 924(c) conviction was predicated on crimes that remain valid predicates post-*Davis*, his motion must be denied.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.        The Offense Conduct

The factual record makes plain that Frazier committed the Section 924(c) offense both in furtherance of an assault with a dangerous weapon and attempted murder in aid of racketeering and in furtherance of a narcotics conspiracy. As described in the presentence investigation report ("PSR") to which Frazier agreed at his sentencing hearing, Frazier was a member of Southside, a violent street gang that sold heroin and crack cocaine in Newburgh, New York (Presentence investigation report ("PSR") ¶¶ 29, 33, attached as Ex. A).[1] Southside members, including Frazier, used violence to defend Southside's drug territory against rival gangs, the most prominent of which was the Yellow Tape Money Gang ("YTMG"). (PSR ¶¶ 29, 33-35). One such act of violence was

---

[1] The PSR is included in the hard-copy version of this submission but has not been filed electronically.

the December 11, 2015 assault with a dangerous weapon and attempted murder of YTMG members.  (PSR ¶ 34).  When members of YTMG drove into Southside territory, Frazier and Southside leader Skylar Davis brandished firearms, and Davis fired at the car, causing the car to crash.  (*Id.*).  Furthermore, Frazier regularly carried a firearm in connection with his drug dealing and sold one firearm to a confidential informant to whom he had previously sold heroin.  (PSR ¶ 33).  Frazier promoted Southside's violence, drug dealing, and use of firearms on social media and in rap videos.  (PSR ¶ 35).

## II.        The Plea Agreement

Frazier pled guilty to lesser-included offenses of the crimes charged in Counts Three and Fourteen of the Indictment pursuant to a plea agreement with the Government (the "Plea Agreement" attached as Ex. B).[2]  Among other things, the Plea Agreement noted that Count Fourteen charged Frazier with using, carrying, and possessing firearms during and in relation to both the crime of violence charged in Count Two of the Indictment (the December 11, 2015 assault and attempted murder) and the narcotics conspiracy charged in Count Three of the Indictment, but that under the terms of the agreement, the Government would accept a plea of guilty to the lesser included offense of brandishing firearms during and in relation to the assault with a dangerous weapon and attempted murder charged in Count Two.  (Plea Agr. 1-2).  The Plea Agreement specifically noted that Frazier agreed that his guilty plea to Count Fourteen includes an admission to his brandishing of a firearm in connection with Count Two.  (Plea Agr. 2 n.1).  Frazier also agreed to plead guilty to a lesser included offense of Count Three, conspiracy to distribute mixtures and substances containing a detectable amount of heroin.  (Plea Agr. 1).  In consideration of

---

[2] The Plea Agreement is included in the hard-copy version of this submission but has not been filed electronically.

Frazier's plea of guilty to lesser included offenses of Counts Three and Fourteen, the Government agreed to dismiss the remaining charges in the Indictment.  (Plea Agr. 2).  The Plea Agreement stipulated that the Guidelines Range was 51 to 63 months' imprisonment for Count Three and the mandatory minimum sentence of 84 months' imprisonment on Count Fourteen, for a total of 135 to 147 months' imprisonment.  (Plea Agr. 4).

As part of the Plea Agreement, Frazier stipulated that he would "not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241; nor seek a sentence modification pursuant to Title 18, United States Code, Section 3582(c), of any sentence at or below the Stipulated Guidelines Range of 135 to 147 months' imprisonment."  (Plea Agr. 5).  The parties agreed, however, that the Frazier reserved his rights to file claims of ineffective assistance of counsel on direct appeal or collateral review.  (Plea Agr. 6).

Frazier acknowledged in the Plea Agreement that he had accepted the agreement and decided to plead guilty because he is in fact guilty.  (Plea Agr. 6).

The parties further agreed, among other things, that any defenses based on statute of limitations were waived with respect to any prosecution that was not time-barred as of the date that the Plea Agreement was signed.  (Plea Agr. 6).

## III.     The Guilty Plea Hearing

At the guilty plea hearing, Frazier was placed under oath.  (Plea Tr. 3, attached as Ex. C). Among other things, the Government correctly summarized the elements of Count Fourteen, including that Frazier committed used, carried, or possessed a firearm during and in relation to a crime of violence, specifically an attempted murder for the purpose of maintaining and increasing his position in an enterprise engaged in racketeering activity, on December 11, 2015 in the vicinity

of South and Liberty Streets in Newburgh and that the firearm was brandished. (Plea Tr. 9-10). The Court correctly advised Frazier that the maximum possible penalty for the crime charged in Count Fourteen was life, with a mandatory minimum term of imprisonment of seven years, which must run consecutively to any other sentence. (Plea Tr. 13-14).

Frazier confirmed that no one had coerced or threatened him in any way to induce him to plead guilty. (Plea Tr. 19-20). He stated that he had read the written Plea Agreement, signed it, read it prior to signing it, discussed it with his attorney, and that he understood the Plea Agreement. (Tr. 19). Frazier further stated that he understood that under the terms of the Plea Agreement he was giving up his right to challenge his sentence, on direct appeal or otherwise, as long as he was sentenced to a prison term of no more than 147 months' incarceration. (Plea Tr. 20-21). Frazier confirmed that his guilty plea was voluntary and made of his own free will and that he was in fact guilty of the charge of brandishing a firearm during and in relation to a December 11, 2015 assault with a dangerous weapon and attempted murder. (Plea Tr. 28).

When asked to state in his own words what he did to make him guilty of Count Fourteen, Frazier said that he was part of the Southside gang, and that to maintain his position in that gang he brandished a firearm on December 11, 2015 when other members of Southside intentionally shot at members of a rival gang in Newburgh. (Plea Tr. 24). Frazier confirmed that Southside was a group of people who associated together for the purpose of committing crimes, that he understood that members of the gang were going to commit multiple crimes, and that he understood that those crimes included selling drugs. (Plea Tr. 25). Frazier further allocuted to his own participation in selling heroin with other people in Newburgh. (Plea Tr. 24, 26). The attorney for the Government included the following in the summary of the proof:

> If the case were to proceed to trial, the government would expect to prove with respect to Count Three that from in or about at least 2014 through in or about June 2017, the defendant sold heroin in Newburgh

as part of his membership in the Southside Gang, which was a violent street gang that sold crack cocaine and heroin and used violence, including shootings and robberies, to defend its drug turf against other rival gang members, including members of a rival Newburgh gang known as the Yellow Tape Money Gang or YTMG. . . .

With respect to Count Fourteen, the government would expect to prove that on or about December 11, 2015, the defendant was in the vicinity of South Street and Liberty Street in Newburgh in the heart of Southside Gang territory with Skylar Davis, a/k/a S-Dot, and other Southside members. The defendant was carrying a firearm, which he showed off to a cooperating witness. While Frazier, Davis and others were outside, a black car driven by a rival YTMG gang member came down the street, and another YTMG member began shooting at the Southside members. Frazier and Davis pulled their guns, and Davis fired back at the car.

(Plea Tr. 21-22).  Frazier did not object to that factual summary.

## IV.        The Sentencing Hearing

Frazier was sentenced primarily to 120 months' incarceration on April 2, 2019.  At the sentencing hearing, Frazier told the Court that he had had an opportunity to review the PSR and that, other than a change agreed to by both parties specifying that it was Frazier's co-defendant who fired shots at the YTMG car, he had no objections to its factual accuracy.  (Sent. Tr. 3, attached as Ex. D).  As previously discussed in the Offense Conduct section, *supra*, the PSR described Frazier's drug-dealing and firearms possession as part of his membership in Southside, Southside's engagement in acts of violence to protect its drug-dealing territory, and the events surrounding the December 11, 2015 attempted murder.  In discussing the seriousness of the offense, the Court observed the following about Frazier:

This defendant not only did his drug dealing in coordination with a violent gang, therefore, capitalized on its reputation, but he was a big part of why it had that reputation. . . . This defendant, from what I can tell, loved being in the gang, boasted about it, bragged about it, enjoyed the ratcheting up of the rivalry with the other gang, didn't think twice about the violence, toted a gun, even sold one, and didn't give any thought to the danger he was putting himself in or the danger he was bringing on his community. So, it would be an

6

> extremely serious offense even if the defendant were not involved in the encounter, I'll say, with YTMG in which he didn't fire his gun, thank God, thank God, but he brandished his gun during a shootout. . . . Dealing drugs is bad. Dealing drugs with a gun is bad. Dealing drugs as part of a violent gang is bad. And being an enthusiastic member who glorifies the violence of that gang is bad, so this is a bad offense.

(Sent. Tr. 15-16).

At the conclusion of the sentencing hearing, the Court informed Frazier that he had the right to appeal his conviction and sentence, to the extent he had not given up those rights through his plea agreement. (Sent. Tr. 22). The Court further advised Frazier that he could apply for leave to appeal *in forma pauperis* if he could not pay the cost of the filing fees and that the notice of appeal must be filed within fourteen days of the judgment of conviction. (*Id.*). Frazier did not file a direct appeal.

## V.        The Instant Motion

On September 19, 2019, Frazier, proceeding *pro se*, timely filed a motion under 28 U.S.C § 2255 to vacate, set aside, or correct his sentence as to Count Fourteen. Frazier asserts that he is "actually innocent" of brandishing a firearm during and in relation to a crime of violence. (Mot. (Dkt. 459) 4). Although Frazier correctly notes that "the underlying act[] supporting the 924(c) is the December 11, 2015 assault with a dangerous weapon and attempted murder," he goes on to analyze his legal claim as if his Section 924(c) conviction were predicated on a racketeering conspiracy charge (Mot. 4-5), which it was not. *United States v. Davis*, 139 S. Ct. 2319 (2019), which held that the definition of "crime of violence" found in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague and therefore unenforceable, therefore has no bearing on Frazier's offense of conviction. Frazier cannot show, and in fact does not argue, that he is innocent of brandishing a firearm in furtherance of the assault with a dangerous weapon and attempted murder;

7

in fact, he is demonstrably and clearly guilty of doing so.  Therefore, Frazier's motion should be denied in its entirety without a hearing.

## ARGUMENT

### I.     Frazier's Claim is Procedurally Barred

Any claim based on *Johnson I* and its progeny fails because it is procedurally defaulted as a result of Frazier's failure to raise it in any direct appeal.  Frazier offers no meaningful explanation for his decision not to raise these claims on direct appeal and, thus cannot show just cause for the failure.  Nor, in the face of the overwhelming evidence of his involvement in the December 11, 2015 assault and attempted murder—not to mention his involvement in drug trafficking and his use and possession of firearms in furtherance of Southside's drug trafficking activities, which resulted in the brandishing and discharge of numerous firearms—can he show resulting prejudice or that he is actually innocent.  As a result, Frazier's *Davis* claim is procedurally barred and should be denied.

### A.     Applicable Law

#### 1.   Section 924(c)

A defendant is guilty of violating Section 924(c) if he used or carried a firearm during and in relation to, or possessed a firearm in furtherance of, a "crime of violence" or "drug trafficking crime."  18 U.S.C. § 924(c)(1)(A).  A "crime of violence" is defined as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "force clause" or "elements clause") or "by its nature . . . involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (the "risk-of-force clause" or the "residual clause").  *Id.* § 924(c)(3)(A), (B).

The Supreme Court recently invalidated as unconstitutionally vague Section 924(c)(3)(B)'s risk-of-force clause. *See United States v. Davis*, 139 S. Ct. 2319 (2019). However, the validity of the "force clause" definition of Section 924(c)(3)(A), and the definition of "drug trafficking crime" set forth in Section 924(c)(2) remain undisturbed by *Davis* or otherwise.

### 2. Section 2255

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, 1217, subjects petitions for relief pursuant to Title 28, United States Code, Section 2255 to a one-year statute of limitations, which runs from the latest of several specified events, including "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). A defendant may properly claim in a § 2255 motion that, based on an intervening Supreme Court decision, his conviction was for "an act that the law does not make criminal." *Davis v. United States*, 417 U.S. 333, 346 (1974). The recent *Davis* decision, as a new substantive rule of constitutional law, applies retroactively to final criminal convictions. *See Welch v. United States*, 136 S. Ct. 1257, 1266 (2016).

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotations omitted); *United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). This bedrock principle arises from concerns of finality in criminal judgments. *See McCleskey v. Zant*, 499 U.S. 467, 490-91 (1991) ("Without finality, the criminal law is deprived of much of its deterrent effect. And when a habeas petitioner succeeds in obtaining a new trial, the erosion of memory and dispersion of witnesses that occur with the passage of time prejudice the government and diminish the chances of a reliable

criminal adjudication.") (internal quotations and citations omitted).  The interest in finality has "special force" for convictions based on guilty pleas.  *Lucas v. United States*, 963 F.2d 8, 14 (2d Cir. 1992) (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).  "The impact of inroads on finality is greatest in the context of guilty pleas because the vast majority of criminal convictions result from such pleas and because 'the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.'" *Id.*

In accordance with the interest in finality, a court may not consider on a Section 2255 motion a claim that could have been raised, but was not raised, on direct review.  Such a claim has been "procedurally defaulted." *Bousley*, 523 U.S. at 622; *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal.").  When a convicted defendant seeks collateral relief based on a claim he has procedurally defaulted by failing to raise it at trial, sentencing, or on direct appeal, he generally must show both cause excusing his procedural default and prejudice resulting from the errors of which he complains.  *Bousley*, 523 U.S. at 622 (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *see also Frady*, 456 U.S. at 167-68.  If the defendant cannot show both cause and prejudice, the court may consider his claim only if he establishes that he is "actually innocent." *Bousley*, 523 U.S. at 624.

The "cause" requirement means that a defendant "was impeded by some objective factor external to the defense, such as governmental interference or the reasonable unavailability of the factual basis for the claim." *McCleskey*, 499 U.S. at 468.  The claim must be "so novel that its legal basis is not reasonably available to counsel." *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*,

468 U.S. 1, 16 (1984)); *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (a change in law may constitute cause if there is "a showing that the factual or legal basis for a claim was not reasonably available to counsel" at the time).  Alternatively, the cause requirement can be met by a showing of futility, such as if "prior state case law has consistently rejected a particular constitutional claim." *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006).  However, futility does not constitute cause if a claim is merely "unacceptable" to a particular court at a particular time.  *Id.* (quoting *Bousley*, 523 U.S. at 623, and *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)).

An appellate or collateral attack waiver in a plea agreement does not constitute adequate cause for default.  *Pollack v. Hobbs*, 98 F. Supp. 2d 287, 291 (E.D.N.Y. 2000), *aff'd*, 8 F. App'x 37 (2d Cir. 2001) ("Having received the benefit of his Rule 11(e)(1)(C) bargain, [the petitioner] is hardly in a position to cite an advantageous 'agreement' under which he promised not to appeal his conviction as an excuse for procedural default, particularly on a claim of which he was well aware before he pled guilty."); *United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995) (appeal waiver in plea agreement did not excuse procedural default in collateral challenge to conviction) (collecting cases).[3]

 "The 'prejudice' requirement is met by establishing actual prejudice resulting from the errors of which Petitioner complains. The error must have resulted in substantial disadvantage, infecting the entire trial with error of constitutional dimensions."  *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (quoting *Frady*, 456 U.S. at 168 and *Murray v. Carrier*, 477 U.S. 478, 494 (1986)) (internal citations and quotations omitted).  In the guilty plea context, a defendant must

---

[3] The Government does not argue that the collateral attack waiver in the plea agreement bars Frazier from bringing his claim at all. To the contrary, it is because that waiver—which goes only to Frazier's sentence, not to the validity of his convictions—does not bar his motion that its existence cannot be cause for his failure to raise this issue on direct appeal.

demonstrate that his plea was infected with a fundamental error "which inherently result[ed] in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Timmreck*, 441 U.S. at 783.  To establish actual prejudice, the defendant must show that he would not have pled guilty had he known of the error.  *Id.* at 784 (habeas petitioner alleging a violation of Rule 11 cannot show that the error "resulted in a 'complete miscarriage of justice' or in a proceeding 'inconsistent with the rudimentary demands of fair procedure' " when he does not argue that "if he had been properly advised by the trial judge, he would not have pleaded guilty"); *Lucas*, 963 F.2d 8, 13 (2d Cir. 1992) (prejudice can be established by demonstrating that the defendant "did not understand the consequences of his plea, or that, if he had been properly advised, he would not have pled guilty"); *see also Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (in the context of a claim of ineffective assistance of counsel, "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

To establish actual innocence, a petitioner must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 289, 327-28 (1995)).  In this context actual innocence means factual innocence, not legal insufficiency.  *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

###### B.    Discussion

The Government does not dispute that under *Davis*, Frazier's 924(c) conviction in Count Fourteen could not be sustained if it had relied solely on a RICO conspiracy predicate. But because it did not, his motion should be denied.  Frazier was charged and convicted of the firearms offense here in furtherance of two predicate violent crimes, assault with a dangerous weapon and attempted

murder in aid of racketeering, which are unaffected by *Davis*.  Because he cannot show either innocence or cause for and prejudice from failing to raise the issue in the proceedings below or on direct appeal, Frazier's *Davis* claim is procedurally barred.  Frazier does not meaningfully attempt to allege that he is actually innocent of the charge to which he pled guilty.  Even if he had argued his innocence, the significant factual record developed at his guilty plea and sentencing hearings forecloses the possibility that Frazier could demonstrate his factual innocence.

### 1.  Frazier Cannot Show Cause for or Prejudice from His Failure to Challenge his Count Fourteen Conviction on Direct Appeal

Frazier has not asserted an objective factor external to the defense that would constitute sufficient cause for his failure to challenge the constitutionality of the Section 924(c) residual clause prior to raising it in his habeas motion.  First, he has not demonstrated the reasonable unavailability of the factual basis for the claim at the time of his guilty plea, which would require showing that the theory adopted in *Davis* was "so novel that its legal basis [was] not reasonably available to counsel."  *Bousley*, 523 U.S. at 622 (citing *Reed v. Ross*, 468 U.S. 1, 16 (1984)). Indeed, *Davis*'s central holding was explicitly premised on the Supreme Court's earlier decisions in the *Johnson v. United States*, 135 S. Ct. 2551 2015) line of cases, which had been decided at the time of Frazier's plea, cases Frazier now cites.  (*See* Mot. 5); *see also Davis*, 139 S. Ct. at 2325–27 (discussing import of previous decisions in *Johnson* and *Dimaya* to the question presented in *Davis*).  Nor could Frazier contend that his default should be excused due to the futility of attacking the constitutionality of the Section 924(c) risk-of-force clause, for similar reasons.  Futility does not constitute cause if the claim was merely "unacceptable" to a particular court at a particular time.  *DiSimone*, 461 F.3d at 191; *see also Bousley*, 523 U.S. at 622-23 ("futility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular

time.' ") (quoting *Engle v. Isaac*, 456 U.S. 107, 130 n.5 (1982)).  In short, the interpretation of the Section 924(c) residual clause set forth in Davis was previously available.

Second, although Frazier does not raise the appeal waiver in his plea agreement as a cause justifying his procedural default, such an argument would be without merit, "particularly on a claim of which he was well aware before he pleaded guilty."  *Pollack v. Hobbs*, 98 F. Supp. 2d 287, 291 (E.D.N.Y. 2000), *aff'd*, 8 F. App'x 37 (2d Cir. 2001); *see also United States v. Pipitone*, 67 F.3d 34, 39 (2d Cir. 1995) (appeal waiver in plea agreement did not excuse procedural default in collateral challenge to conviction) (collecting cases).

Third, Frazier does not raise even a conclusory assertion that his failure to raise the alleged *Davis* claim actually prejudiced him.  He "must shoulder the burden of showing, not merely that the errors . . . created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting [the proceedings] with error of constitutional dimensions," *Frady*, 456 U.S. at 170 (discussing in the context of a habeas petition following a trial, not a guilty plea), and resulted in a "complete miscarriage of justice," *Timmreck*, 441 U.S. at 784.  Although he refrains from making any prejudice argument, Frazier could not credibly claim that he would not have pled guilty and would have proceeded to trial, given the overwhelming evidence of his guilt. Furthermore, as summarized previously, the evidence proffered by the Government during the change of plea hearing and the facts set forth in the PSR make abundantly clear that there was overwhelming proof of Frazier's guilt not just of the lesser included offenses of Counts Three and Fourteen to which Frazier pled, but also of Frazier's extensive and regular use of firearms as part of his drug-dealing activity.  Likewise, the evidence showed that Southside's acts of violence, including the December 11, 2015 shooting, were committed in large part by Frazier and other Southside members to defend drug territory against rival gangs.

14

## 2. Frazier Is Not Actually Innocent

Having failed to demonstrate cause and actual prejudice, Frazier can only prevail by establishing actual innocence. This requires him to show not just his legal innocence, but that he is factually innocent of the charge in Count Fourteen. *See Bousley*, 523 U.S. at 623. Frazier, who bears the burden of establishing his innocence, cannot possibly do so in light of the existing record. Frazier pled guilty to a plea agreement stating that he used firearms in furtherance of an assault with a dangerous weapon and an attempted murder in aid of racketeering, and Frazier further agreed in the plea agreement to acknowledge his participation in that assault and attempted murder. In the same plea agreement, Frazier also admitted to participation in a narcotics conspiracy. Furthermore, as the Court knows, the Southside gang to which he he admitted membership was in significant part a narcotics conspiracy. Frazier was sold a firearm to one of his narcotics customers, he regularly carried a firearm while dealing drugs, and he bragged on social media about possessing guns and drugs. Southside's acts of violence, including the December 11, 2015 shooting during which Frazier brandished a firearm, were motived in significant part by the need to defend drug-dealing territory against rivals.

Frazier's cursory petition makes no effort to grapple with the overwhelming factual record establishing his guilt of Count Fourteen. Indeed, Frazier does not address his membership in Southside, his participation in drug dealing, or his participation in the December 11, 2015 attempted murder. However, even if he had now denied his participation in that criminal activity, his allocution at the change of plea hearing alone establishes that he cannot be factually innocent of Count Fourteen, and there is no reason to doubt his sworn statements to the Court. *See Acevedo v. United States*, No. 07 Cr. 378, 2012 WL 3764544, at *4 (S.D.N.Y. Aug. 30, 2012) ("There is a 'strong presumption of accuracy' accorded a defendant's statements during a plea allocution.")

15

(quoting *United States v. Juncal*, 245 F.3d 166, 171 (2d Cir. 2001)).  Nor does Frazier address the undisputed factual recitations in the PSR of his participation in the charged narcotics conspiracy, his participation in the December 11, 2015 attempted murder, nor the fact that Southside members were engaged in a violent rivalry with YTMG members.  The factual record developed in the prior proceedings—including statements Frazier himself made to the Court during his plea allocution and factual recitations by the Government, the Court, and the Probation Office at the plea and sentencing hearings to which Frazier did not object—definitively forecloses any argument that Frazier is factually innocent.  Frazier, a gun-brandishing Southside member and drug dealer, cannot demonstrate actual, factual innocence of brandishing firearms in furtherance of assault with a dangerous weapon and attempted murder in aid of racketeering.  His *Davis* claim should be denied.

## II.        Frazier's Claim Fails on the Merits Because Assault with a Dangerous Weapon and Attempted Murder Are Crimes of Violence Under the Force Clause

Although correctly noting that the categorical approach requires courts to analyze whether predicate crimes constitute "crimes of violence" by looking only to their elements and not to the underlying facts (Mot. 5), Frazier fails to analyze the correct predicate crimes: here, assault with a dangerous weapon and attempted murder.  *United States v. Davis*, 139 S. Ct. 2319 (2019), accordingly has no bearing on Frazier's conviction.

As previously noted, Section 924(c) defines "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" (the "force clause" or "elements clause"); whereas the *Davis* invalidated  the "risk-of-force clause" or the "residual clause"). 18 U.S.C. § 924(c)(3)(A), (B).  The Government agrees that a RICO conspiracy, such as the one charged in Count One of the Indictment, would not satisfy the "force clause" definition of Section 924(c)(3)(A), and that it therefore could not have served

16

as a "crime of violence" to support a conviction under Section 924(c). However, Frazier's Section 924(c) conviction was not predicated on RICO conspiracy.

Frazier does not argue that assault with a dangerous weapon and attempted murder in aid of racketeering are not crimes of violence under the force clause, and any such argument would be entirely without merit. *See, e.g.*, *Singh v. Barr*, 939 F.3d 457, 464 (2d Cir. 2019) (holding that second-degree assault with a deadly weapon or dangerous instrument under New York Penal Law § 120.05(2) is a crime of violence under the identically worded 18 U.S.C. § 16(a) definition of a crime of violence); *United States v. Sierra*, 782 F. App'x 16, 20 (2d Cir. 2019) (holding that murder in aid of racketeering and assault and attempted murder in aid of racketeering are crimes of violence under the force clause, and noting that the Second Circuit has "repeatedly treated it as self-evident that under New York law 'attempted murder is a crime unmistakably involving an attempted use of physical force.'" (quoting *United States v. Praddy*, 729 F. App'x 21, 24 (2d Cir. 2018)); *see also Mayes v. United States*, No. 12-CR-0385, 2019 WL 6307411, at *3 (E.D.N.Y. Nov. 25, 2019) (finding that federal attempted murder in aid of racketeering is also a crime of violence under § 924(c)(3)(A)) (collecting cases).

Accordingly, even if Frazier's claim was not procedurally barred, it must fail on the merits.

**CONCLUSION**

Frazier motion to vacate his conviction should be denied, and no certificate of appealability should issue because the petitioner has not made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c).

Dated: New York, New York
       March 10, 2020

                              Respectfully submitted,

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York


                    By:    /s/ Allison Nichols
                           Allison Nichols
                           Maurene Comey
                           Jacqueline Kelly
                           Samuel Raymond
                           Assistant United States Attorneys
                           Tel: (212) 637-2366

**AFFIRMATION OF SERVICE**

ALLISON NICHOLS, pursuant to Title 28, United States Code, Section 1746, hereby

declares under the penalty of perjury:

That I am an Assistant United States Attorney in the Office of the United States Attorney

for the Southern District of New York.  That, on March 10, 2020, I caused a copy of the

Government's Memorandum of Law in Opposition to Diamante Frazier's Motion to Vacate His

Conviction to be delivered by First Class mail to:

> DIAMANTE FRAZIER 79257-054
> FCI FORT DIX
> FEDERAL CORRECTIONAL INSTITUTION
> P.O. BOX 2000
> JOINT BASE MDL, NJ  08640

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated:  New York, New York
March 10, 2020

/s/ Allison Nichols
Allison Nichols
Maurene Comey
Jacqueline Kelly
Samuel Raymond
Assistant United States Attorneys
Tel: (212) 637-2366

# EXHIBIT A

# EXHIBIT B

# EXHIBIT C

1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------------x

 3   UNITED STATES of AMERICA,

 4              -against-                      17 Cr. 364(CS)
                                               Plea
 5
     DIAMANTE FRAZIER,
 6
                   Defendant     .
 7
     ------------------------------------x
 8

 9                                     United States Courthouse
                                       White Plains, New York
10
                                       October 17, 2018
11

12                  THE HONORABLE CATHY SEIBEL,
                                   District Court Judge
13

14

15

16   GEOFFREY S. BERMAN
          United States Attorney for
17        the Southern District of New York
     BY:  JACQUELINE C. KELLY
18             Assistant United States Attorney

19

20   LLOYD EPSTEIN
               Attorney for Diamante Frazier
21

22

23

24

25
                 Angela O'Donnell, RPR, 914-390-4025
```

```
 1              THE CLERK:  The Honorable Cathy Seibel presiding.
 2    United States v Frazier.
 3              THE COURT:  Good afternoon, Ms. Kelly, Mr. Epstein,
 4    Mr. Frazier.  Everyone can have a seat.
 5              Am I correct, Mr. Epstein, that your client's
 6    prepared to enter a plea?
 7              MR. EPSTEIN:  Yes, your Honor, a guilty plea to
 8    Counts Three and Fourteen.
 9              THE COURT:  Let me ask Mr. Clark to place Mr. Frazier
10    under oath.
11              (Diamante Frazier sworn)
12              THE CLERK:  Please state your full name for the
13    record and spell it out slowly.
14              THE DEFENDANT:  Diamante Frazier, D-I-A-M-A-N-T-E,
15    F-R-A-Z-I-E-R.
16              THE COURT:  Thank you, Mr. Frazier.  You can have a
17    seat.
18              This plea is to the S4 indictment.  We have not
19    arraigned this defendant on the S4; correct?
20              MS. KELLY:  That's correct, your Honor.
21              THE COURT:  Let's do that briefly.
22              MR. EPSTEIN:  Your Honor, I have gone over the
23    indictment with my client.  We waive the reading of it, and we
24    enter a plea of not guilty, and I'll withdraw the plea of not
25    guilty, and enter a plea of guilty to Counts Three and
```

1    Fourteen.

2              THE COURT:  You're convinced your client understands

3    what he's charged with?

4              MR. EPSTEIN:  Yes.

5              THE COURT:  All right.

6              Mr. Frazier, you've seen the indictment which is

7    marked S4 17CR364.

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Gone over it with your lawyer?

10             THE DEFENDANT:  Yes, ma'am.

11             THE COURT:  You understand what you're charged with?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  All right.  Do you understand that you're

14   now under oath, and if you answer any of my questions falsely,

15   your false answers could later be used against you in a

16   separate prosecution for perjury or making a false statement?

17             THE DEFENDANT:  Yes, ma'am.

18             THE COURT:  How old are you?

19             THE DEFENDANT:  Twenty-five.

20             THE COURT:  How far did you go in school?

21             THE DEFENDANT:  College.

22             THE COURT:  So you're able to read, write, speak and

23   understand English?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Are you now or have you recently been

1    under the care of a doctor or psychiatrist.

2              THE DEFENDANT:  No.

3              THE COURT:  Have you ever been treated or

4    hospitalized for any mental illness or any type of addiction?

5              THE DEFENDANT:  Nope.

6              THE COURT:  In the past 24 hours, have you taken any

7    drugs, medicine or pills or drunk any alcohol?

8              THE DEFENDANT:  No.

9              THE COURT:  Is your mind clear today?

10             THE DEFENDANT:  Yes.

11             THE COURT:  You feeling all right?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Now you understand you want to plead

14   guilty to Count Three and Count Fourteen; is that correct?

15             THE DEFENDANT:  Yep.

16             THE COURT:  Have you had a full opportunity to

17   discuss your case with your lawyer and to discuss the

18   consequences of pleading guilty?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Are you satisfied with Mr. Epstein and

21   his representation of you?

22             THE DEFENDANT:  Yep.

23             THE COURT:  Does either counsel have any doubt as to

24   the defendant's competence to plead at this time?

25             MS. KELLY:  No, your Honor.

1           MR. EPSTEIN:  No, your Honor.

2           THE COURT:  On the basis of Mr. Frazier's responses

3    to my questions, my observations of his demeanor and the views

4    of counsel, I find that he is fully competent to enter an

5    informed plea at this time.

6           Before I take your plea, though, Mr. Frazier, I'm

7    going to ask you questions in order to satisfy myself that you

8    are guilty and that you fully understand the consequences of

9    your plea.

10          First I'm going to describe certain rights you have

11   under the Constitution and laws of the United States, which

12   rights you'll be giving up if you plead guilty.  Please listen

13   carefully.  If I say anything that you don't understand, stop

14   me, and either Mr. Epstein or I will explain it further.  Okay?

15          THE DEFENDANT:  Okay.

16          THE COURT:  You have the right to be represented by

17   counsel at trial and at every stage of the case, and if you

18   could not afford counsel, counsel would be appointed to

19   represent you for free; do you understand that?

20          THE DEFENDANT:  Yep.

21          THE COURT:  You have a right to a speedy and public

22   trial by a jury on the charges against you; do you understand

23   that?

24          THE DEFENDANT:  Yep.

25          THE COURT:  If there were a trial, you would be

1   presumed innocent and the government would be required to prove
2   you guilty by competent evidence and beyond a reasonable doubt.
3   You would not have to prove you were innocent at a trial; do
4   you understand that?

5            THE DEFENDANT:   Yes.

6            THE COURT:   If there were a trial, a jury composed of
7   12 people selected from this district would have to find
8   unanimously that you were guilty.   In other words, you could
9   only be found guilty if all 12 agreed that you were guilty; do
10  you understand that?

11           THE DEFENDANT:   Yes.

12           THE COURT:   If there were a trial, you would have a
13  right to see and hear all the witnesses against you and your
14  lawyer could cross examine them.   You would have the right to
15  have your lawyer object to the Government's evidence and offer
16  evidence on your behalf, if you so desired, and you would have
17  the right to have subpoenas issued to compel witnesses to come
18  to Court if you wanted to call them to testify in your defense;
19  do you understand that?

20           THE DEFENDANT:   Yes.

21           THE COURT:   If there were a trial, you would have the
22  right to testify if you wanted to, but no one could force you
23  to testify if you did not want to.

24           Further, no inference or suggestion of guilt could be
25  drawn if you chose not to testify at a trial.   In other words,

1    the jury would be told that it could not hold it against you if

2    you chose not to testify; do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand that by pleading guilty

5    today you will be giving up all the rights I have described,

6    except the right to counsel?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that, except for the

9    right to counsel, you're waiving these rights going forward and

10   giving them up for the rest of the case?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand you will have no trial

13   and you will be found guilty based just on your plea of guilty?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand it's completely your

16   choice whether to plead guilty or go to trial?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Do you understand if you wanted to change

19   your mind right now and decide not to plead guilty, that would

20   be okay?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Now you've gotten a copy of the

23   indictment which is marked S4 17CR364?

24             THE DEFENDANT:  Yes.

25             THE COURT:  Have you read it?

1                THE DEFENDANT:  Yep.

2                THE COURT:  Did you discuss it with Mr. Epstein?

3                THE DEFENDANT:  Yes.

4                THE COURT:  Did you tell him everything you know

5      about the case?

6                THE DEFENDANT:  Yes.

7                THE COURT:  Do you understand you're charged in

8      Count Three with participating in a conspiracy to distribute

9      and possess with intent to distribute at least 1 kilogram of

10     heroin?

11               THE DEFENDANT:  Yes.

12               THE COURT:  And do you understand you're charged in

13     Count Fourteen with brandishing a firearm during and in

14     relation to two different crimes; one is an assault and

15     attempted murder on December 11th, 2015, and the other is the

16     narcotics conspiracy charged in Count Three?

17               THE DEFENDANT:  Yes.

18               THE COURT:  Ms. Kelly, what are the elements of those

19     offenses?

20               MR. EPSTEIN:  Your Honor, just to clarify,

21     Mr. Frazier will be pleading guilty to a lesser included of the

22     narcotics count.  There won't be any specified weight.

23               THE COURT:  Oh, I'm sorry, I misread.  So Count Three

24     as indicted charges at least a kilo of heroin, but the

25     defendant's going to be pleading to just participating in a

1    conspiracy to distribute a quantity of heroin.

2              MR. EPSTEIN:  Correct.

3              THE COURT:  And Count Fourteen charges discharge but

4    the defendant will be pleading to brandishing.

5              MR. EPSTEIN:  Yes.

6              THE COURT:  Thank you for pointing that out.

7              Ms. Kelly, the elements of Count One.

8              MS. KELLY:  Yes, your Honor.

9              THE COURT:  I mean, Count Three.

10             MS. KELLY:  And these are the elements as to what the

11   defendant will be pleading to.

12             As to Count Three, the government would have to prove

13   the following three elements:

14             First, that an agreement or understanding to commit

15   an offense against the United States, here to violate 21 United

16   States Code, Section 841, existed between two or more persons;

17             Second, that the defendant knowingly became a member

18   of the charged conspiracy; and

19             Third, that the controlled substance that the

20   defendant conspired to distribute and possess with intent to

21   distribute was heroin.

22             As to Count Fourteen, the government would have to

23   prove each of the following elements beyond a reasonable doubt:

24             First, that on or about December 11th, 2015, the

25   defendant used or carried or possessed a firearm;

1          Second, that the defendant used or carried the

2     firearm during and in relation to a crime of violence,

3     specifically an attempted murder, for the purpose of

4     maintaining and increasing the defendant's position in an

5     enterprise engaged in racketeering activity in the vicinity of

6     South and Liberty Streets in Newburgh;

7          Third, that the defendant acted knowingly and

8     willfully; and

9          Fourth, that the firearm was brandished.

10          In order to prove that the defendant did this for the

11     purpose of maintaining and increasing his position in the

12     racketeering enterprise, the government would also have to

13     prove the existence of the racketeering enterprise.

14          Specifically, first, that the defendant knowingly

15     agreed to conduct or participate in the conduct of the affairs

16     of the charged enterprise through a pattern of racketeering

17     activity;

18          Second, that an enterprise was established;

19          Third, that the enterprise would be engaged in or its

20     activities would affect interstate or foreign commerce; and

21          Fourth, that the defendant was employed by or

22     associated with the enterprise.

23          Finally, as to both counts, the government would have

24     to prove by a preponderance of the evidence that venue is

25     proper in the Southern District of New York.

1    THE COURT:  Count Fourteen has as its predicates both
2    the Violent Crime in Aid of Racketeering charged in Count Two
3    and the narcotics conspiracy charged in Count Three.

4    MS. KELLY:  Yes, your Honor.  As set forth in the
5    plea agreement, the government is accepting a guilty plea to
6    the offense of brandishing firearms during and in relation to
7    just the December 11th, 2015, assault with a dangerous weapon
8    and attempted murder.

9    THE COURT:  Okay.  Okay.  Thank you.

10    Mr. Frazier, did you hear what the prosecutor said
11    about the elements of the crimes?

12    THE DEFENDANT:  Yes, ma'am.

13    THE COURT:  Do you understand if you chose not to
14    plead guilty, the government would have to prove each part or
15    element of each of the offenses beyond a reasonable doubt at
16    trial?

17    THE DEFENDANT:  Yes.

18    THE COURT:  All right.  Now let's talk about the
19    possible penalties.  And we'll start with Count Three.  Do you
20    understand that -- that's the narcotic conspiracy.  Do you
21    understand that that carries a maximum prison term of 20 years,
22    a maximum supervised release term of life, a maximum fine of
23    the greater of $1 million or twice the gross gain from the
24    offense plus a mandatory $100 special assessment?

25    THE DEFENDANT:  Yes.

1          THE COURT:  And do you understand that Count One not

2    only carries the maximum -- not Count One, I keep saying that.

3          Count Three not only carries the maximum sentence

4    which I just described but also carries a mandatory minimum

5    penalty of three years supervised release?

6          THE DEFENDANT:  Yes.

7          THE COURT:  So do you understand that means I must

8    sentence you to at least that minimum penalty unless there's an

9    exception to the mandatory minimum?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Looking at the plea agreement, it doesn't

12   look like either side is expecting an exception to the

13   mandatory minimum --

14         MR. EPSTEIN:  Your Honor, the mandatory minimum is

15   zero years.  The only mandatory minimum is the three years

16   supervised release.

17         THE COURT:  That's what we're talking about.  I said

18   the only mandatory minimum on Count Three is three years

19   supervised release.

20         I can't go below that unless there's an exception; do

21   you understand that?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  And it doesn't look like either party is

24   expecting an exception in your case.

25         So unless something changes, I have to give you at

1   least three years supervised release on Count Three, and I

2   could give you as much as life; do you understand that?

3               THE DEFENDANT:  Uh-hum.

4               THE COURT:  And in terms of prison, on Count Three

5   it's anywhere from zero to 20 years.

6               THE DEFENDANT:  Okay.

7               THE COURT:  And do you understand that Count Four --

8   excuse me, Count Fourteen, carries a maximum sentence of life

9   imprisonment, a maximum term of supervised release of five

10  years, a maximum fine of the greater of $250,000 or twice the

11  gross gain from the offense plus a mandatory $100 special

12  assessment?

13              THE DEFENDANT:  Yes.  Sorry.

14              THE COURT:  Yes, you have to say it out loud.

15              And do you understand that Count Fourteen also

16  carries a mandatory minimum sentence of seven years

17  imprisonment, which must run consecutively to any other

18  sentence?

19              THE DEFENDANT:  Yes.

20              THE COURT:  So, again, unless there's an exception to

21  the mandatory minimum, I have to give you at least seven years

22  imprisonment on Count Fourteen and that has to run after

23  whatever sentence I give you on Count Three; do you understand

24  that?

25              THE DEFENDANT:  Yes, ma'am.

1      THE COURT:  And again, it doesn't look like either

2    side's expecting an exception.  So unless something changes, I

3    have to give you at least seven years on Count Fourteen; do you

4    understand that?

5      THE DEFENDANT:  Yes.

6      THE COURT:  And you understand that whatever

7    sentence -- well, let me ask it a different way.

8      You're pleading guilty to two different counts in the

9    indictment.  Do you understand that I'm going to impose a

10   separate sentence on each count?

11     THE DEFENDANT:  Yes.

12     THE COURT:  Do you understand that the sentences have

13   to run consecutively, meaning you'll serve one after the other?

14     THE DEFENDANT:  Yes.

15     THE COURT:  And do you understand that the total

16   maximum possible sentence is life imprisonment with a mandatory

17   minimum of seven years?

18     THE DEFENDANT:  Yes.

19     THE COURT:  Now I've mentioned supervised release.

20   Do you understand that supervised release refers to a period of

21   monitoring and supervision following a prison term?

22     THE DEFENDANT:  Yes.

23     THE COURT:  There are terms and conditions of

24   supervised release with which you must comply, and if you do

25   not comply with them, you could be returned to prison without a

1    jury trial; do you understand that?

2                THE DEFENDANT:  Yes.

3                THE COURT:  Do you understand that if you violate the

4    terms or conditions of supervised release and are returned to

5    prison, the new prison term could be for part or all of the

6    term of supervised release and you would not get credit for

7    time previously served on your sentence or for time previously

8    served on supervised release?

9                THE DEFENDANT:  Yes.

10                THE COURT:  Do you also understand as part of your

11    sentence I can order you to make restitution to any person

12    injured as a result of your criminal conduct?

13                THE DEFENDANT:  Yes.

14                THE COURT:  Are you a United States citizen?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Do you understand that your guilty plea

17    may deprive you of valuable civil rights such as the right to

18    vote, the right to hold public office, the right to serve on a

19    jury, the right to hold certain professional licenses and the

20    right to possess any kind of firearm?

21                THE DEFENDANT:  Yes.

22                THE COURT:  Do you understand there are sentencing

23    guidelines that I must consider in determining the appropriate

24    sentence in your case?

25                THE DEFENDANT:  Yes.

1    THE COURT:  Have you talked to Mr. Epstein about the

2    guidelines?

3         THE DEFENDANT:  Yes.

4         THE COURT:  Do you understand that I will not be able

5    to determine the relevant sentencing guidelines range for your

6    case until after a presentence report has been completed by the

7    probation office and you and the government have had the chance

8    to challenge any of the facts reported by the probation office?

9         THE DEFENDANT:  Yes.

10        THE COURT:  Do you further understand that even after

11   I determine what guidelines range applies to your case, the

12   guidelines provide me with the ability to depart from the range

13   calculated under the guidelines and to impose a sentence that

14   is above or below that range?

15        THE DEFENDANT:  Yes.

16        THE COURT:  After I determine the appropriate

17   guideline range and after I determine whether under the

18   guidelines an upward or downward departure from the range is

19   called for, I'll then determine the proper sentence in your

20   case having in mind not only the sentencing guidelines but also

21   each of the factors set forth in Title 18, United States Code,

22   Section 3553(a), a statute that requires me to take into

23   account a number of factors in addition to the sentencing

24   guidelines in considering the appropriate sentence for your

25   case; do you understand that?

1           THE DEFENDANT:  Could you explain that?

2           THE COURT:  Want me to say it again?

3           THE DEFENDANT:  Yes, please.

4           THE COURT:  No problem.

5           After I determine the appropriate guideline range and

6    after I determine whether under the guidelines an upward or

7    downward departure from the range is called for, I'll then

8    determine the proper sentence in your case having in mind not

9    only the guidelines but also each of the factors set forth in

10   Title 18, US Code, Section 3553(a), which is a law that

11   requires me to take into account a number of factors in

12   addition to the sentencing guidelines in considering the

13   appropriate sentence for your case.

14          THE DEFENDANT:  Yes, I understand.

15          THE COURT:  You understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  So even after I determine the guidelines

18   range for your case, I must also consider these other factors,

19   and I might settle on a sentence higher or lower than what the

20   guidelines recommend; do you understand that?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand there's no parole in

23   the federal system and you will not be released early on

24   parole?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand if anyone has attempted

2    to estimate or predict what your sentence will be, their

3    estimate or prediction could be wrong?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Nobody, not even your lawyer or the

6    Government's lawyer, can or should give you any assurance as to

7    what your sentence will be.  I'm going to decide your sentence

8    and I'm not going to do that now.  I can't do it until after

9    the probation office completes the presentence report, and I've

10   ruled on any challenges to the report, calculated the

11   guidelines range, determined whether there are grounds to

12   depart up or down from that range, and considered all the

13   statutory factors.

14         So nobody, not even I can predict what I'm going to

15   decide down the road to be the appropriate sentence in your

16   case; do you understand all that?

17         THE DEFENDANT:  Yes, ma'am.

18         THE COURT:  Do you also understand that if your

19   sentence is different from what your lawyer or anyone else told

20   you it might be or if it's different from what you expect or if

21   it's different from what's contained in your plea agreement

22   with the government, you will still be bound by your guilty

23   plea and you will not be allowed to withdraw your guilty plea?

24         THE DEFENDANT:  Yes.

25         THE COURT:  I've been given an original plea

1    agreement.   I'm going to mark it as Court Exhibit 1.

2              Is that your signature on the last page?

3              THE DEFENDANT:   Yes.

4              THE COURT:   Did you read the agreement before you

5    signed it?

6              THE DEFENDANT:   Yes.

7              THE COURT:   Did you discuss it with Mr. Epstein

8    before you signed it?

9              THE DEFENDANT:   Yes.

10             THE COURT:   Did you discuss everything in it?

11             THE DEFENDANT:   Yes.

12             THE COURT:   Do you fully understand the agreement?

13             THE DEFENDANT:   Yes.

14             THE COURT:   Mr. Epstein, do you believe your client

15   fully understands the agreement?

16             THE DEFENDANT:   Yes.

17             THE COURT:   Mr. Frazier, is this written agreement

18   the complete understanding between you and the government

19   concerning your case?

20             THE DEFENDANT:   Yes.

21             THE COURT:   Is there any promise, agreement,

22   understanding or deal that you have with the government that's

23   not written down in this agreement?

24             THE DEFENDANT:   No.

25             THE COURT:   Has anyone threatened you or forced you

1    or coerced you to plead guilty or to enter into the plea

2    agreement?

3              THE DEFENDANT:  No.

4              THE COURT:  Besides what's in the plea agreement, has

5    anyone promised you anything or offered you any inducements to

6    plead guilty or to enter into the plea agreement?

7              THE DEFENDANT:  No.

8              THE COURT:  Has anyone made a promise to you as to

9    what your sentence will be?

10             THE DEFENDANT:  Nope.

11             THE COURT:  Now I see in the plea agreement that you

12   and the government have reached agreements or stipulations

13   regarding the sentencing guidelines.

14             Do you understand that those stipulations regarding

15   the guidelines are binding on you and they're binding on the

16   government but they're not binding on me?

17             THE DEFENDANT:  Yes.

18             THE COURT:  I will of course consider what you and

19   the government have agreed to in the plea agreement, but I'll

20   be making my own determination of your guidelines range; do you

21   understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And do you understand that under the plea

24   agreement you're giving up your right to appeal or otherwise

25   attack or challenge the conviction and sentence as long as I

1    sentence you within or below the stipulated guidelines range of

2    135 to 147 months imprisonment?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Mr. Epstein, do you know of a valid

5    defense that would prevail at trial or any reason why your

6    client should not be permitted to plead guilty?

7              THE DEFENDANT:  No.

8              THE COURT:  Do you believe there's an adequate

9    factual basis to support the plea?

10             MR. EPSTEIN:  Yes.

11             THE COURT:  Ms. Kelly, do you believe there's an

12   adequate factual basis to support the plea?

13             MS. KELLY:  I do, your Honor.

14             THE COURT:  Could you please summarize what the

15   government would prove if the case went to trial?

16             MS. KELLY:  Yes.  If the case were to proceed to

17   trial, the government would expect to prove with respect to

18   Count Three that from in or about at least 2014 through in or

19   about June 2017, the defendant sold heroin in Newburgh as part

20   of his membership in the Southside Gang, which was a violent

21   street gang that sold crack cocaine and heroin and used

22   violence, including shootings and robberies, to defend its drug

23   turf against other rival gang members, including members of a

24   rival Newburgh gang known as the Yellow Tape Money Gang or

25   YTMG.

1          The defendant regularly carried a gun in connection

2    with his drug dealing, and on one occasion sold a gun to a

3    confidential informant acting at the direction of law

4    enforcement.

5          The defendant also sold heroin on three occasions to

6    the confidential informant as part of controlled purchases.

7          With respect to Count Fourteen, the government would

8    expect to prove that on or about December 11, 2015, the

9    defendant was in the vicinity of South Street and Liberty

10   Street in Newburgh in the heart of Southside Gang territory

11   with Skylar Davis, a/k/a S-Dot, and other Southside members.

12   The defendant was carrying a firearm, which he showed off to a

13   cooperating witness.

14         While Frazier Davis and others were outside, a black

15   car driven by a rival YTMG gang member came down the street,

16   and another YTMG member began shooting at the Southside

17   members.  Frazier and Davis pulled their guns, and Davis fired

18   back at the car.

19         An eyewitness described seeing multiple guns on their

20   side of the street; however, ballistics evidence collected at

21   the scene only proves that one gun matching the caliber carried

22   by Davis was fired.

23         The shots from Southside caused the YTMG car to crash

24   injuring all three members inside it.  Following the incident,

25   YTMG member Gabriel Warren who was driving the car called out

1    Davis and Frazier on Facebook for the shooting and they liked
2    and commented on the post in response.
3         The defendant's membership in the Southside Gang
4    would be further corroborated by additional witness testimony
5    and Facebook posts by the defendant and other gang members.
6         The Government's other evidence as to Counts Three
7    and Fourteen would consist of, among other things:   Law
8    enforcement testimony regarding the recovery of ballistics
9    evidence at the scene of the December 11th, 2015, shooting;
10   eyewitness and cooperator testimony regarding that shooting;
11   cooperator testimony and Facebook evidence from Frazier and
12   Southside members demonstrating the defendant's membership in
13   Southside, including a rap video the defendant posted on or
14   about May 15, 2017, in which he appears with other Southside
15   members, raps about dealing crack, being in the gang, and
16   carrying a gun to defend the gang.   This video was also posted
17   by fellow gang members and co-defendants Ditavious Williams and
18   Paradise Branch.
19        Controlled purchases of heroin and a firearm from the
20   defendant and of crack cocaine and heroin from other Southside
21   members.   Video and photo surveillance of those transactions
22   and wiretap evidence of wiretap of another Southside member's
23   phone, including numerous conversations between Southside
24   members about drug sales and gang-related shootings.
25        THE COURT:   Thank you, Ms. Kelly.

1       Mr. Frazier, can you tell me in your own words or in

2  words you've agreed on with your lawyer, what you did that

3  makes you guilty.

4       THE DEFENDANT: Count Three, in 2017 I sold heroin in

5  Newburgh with other people; and to Count Fourteen, possessed

6  and brainished. In 2016 and '17 I was a part of a gang called

7  Southside. As part of the gang and to maintain my position in

8  the gang, I was present and brandished a firearm on

9  December 11, 2015. Yeah, 2015, when Southside intentionally

10  shot at gang members of a rival gang in Newburgh. In Newburgh.

11  This occurred in Newburgh.

12       THE COURT: Hold on, I think I didn't catch exactly

13  what you said about Count Fourteen; can you say that again?

14       THE DEFENDANT: In 2016 and '17, I was part of a gang

15  called Southside. As part of the gang and to maintain my

16  position in the gang, I was present and brandished a firearm on

17  December 11th, 2015, when Southside initially shot at members

18  of a rival gang in Newburgh.

19       MR. EPSTEIN: I think it was intentionally shot not

20  initially shot.

21       THE DEFENDANT: Intentionally shot.

22       THE COURT: The shooting was in December 2015. The

23  defendant said he was a member of Southside in 2016 and 2017.

24       MR. EPSTEIN: I think it was misspoken. It's 2015,

25  '16 and '17.

1          THE COURT:  Let me ask Mr. Frazier.  At this time of

2    this shooting on December 11th, '15, when the car crashed.

3          THE DEFENDANT:  Uh-hum.

4          THE COURT:  Were you a member of Southside at that

5    time?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Okay.  So you became a member of at least

8    as of 2015.

9          THE DEFENDANT:  Yeah.

10         THE COURT:  Okay.  And Southside was a group of

11   people who associated together for, among other things, the

12   purpose of committing crimes together?

13         THE DEFENDANT:  Yes.

14         THE COURT:  And when you became a member, did you

15   understand that members of the gang were going to commit

16   multiple crimes?

17         THE DEFENDANT:  Yes.

18         THE COURT:  And when you -- and that did include

19   selling drugs?

20         THE DEFENDANT:  Yes.

21         THE COURT:  And you concede, Mr. Epstein, that the

22   government would be able to prove the interstate commerce

23   element?

24         MR. EPSTEIN:  Yes.

25         THE COURT:  And on this date, December 15, you were

                 Angela O'Donnell, RPR, 914-390-4025

1    part of a group of Southside members who had a confrontation

2    about YTMG?

3              THE DEFENDANT:  Yes.

4              THE COURT:  And somebody in Southside actually shot

5    at YTMG and vice versa?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And as part of that you displayed a

8    firearm so that the other people would know you were armed and

9    could shoot?

10              THE DEFENDANT:  Yes.

11              THE COURT:  And did you also agree with other members

12    of Southside to -- well, it doesn't have to be with other

13    members of Southside.

14              Did you agree with other people to work together to

15    sell heroin?

16              THE DEFENDANT:  Yes.

17              THE COURT:  And this all took place in Newburgh?

18              THE DEFENDANT:  Yes.

19              THE COURT:  When you were doing these things, did you

20    know that what you were doing was wrong and illegal?

21              THE DEFENDANT:  Yes.

22              THE COURT:  Did anybody threaten or coerce you or

23    force you to do these things?

24              THE DEFENDANT:  Nope.

25              THE COURT:  And do you admit to the forfeiture

1    allegations with respect to Count Three and agree to forfeit

2    any proceeds of the drug conspiracy?

3              THE DEFENDANT: Yes. There is no proceeds.

4              MR. EPSTEIN: Your Honor.

5              THE COURT: There's no agreement on forfeiture;

6    correct?

7              MS. KELLY: No, your Honor.

8              THE COURT: And you're not in possession of any of

9    the proceeds?

10             THE DEFENDANT: No, ma'am.

11             THE COURT: Does either lawyer think I should ask any

12   further questions?

13             MS. KELLY: No, your Honor.

14             MR. EPSTEIN: No, your Honor.

15             THE COURT: All right, let me ask you now formally,

16   Mr. Frazier, how do you plead to the charge in Count Three of

17   indictment S4 17CR364 charging you with conspiracy to

18   distribute and possess with intent to distribute a quantity of

19   heroin, guilty or not guilty?

20             THE DEFENDANT: Guilty.

21             THE COURT: Are you, in fact, guilty that charge?

22             THE DEFENDANT: Yes, ma'am.

23             THE COURT: Are you pleading guilty voluntary and of

24   your own free will?

25             THE DEFENDANT: Yes.

1          THE COURT:  And how do you plead to the charge in

2     Count Fourteen charging you with brandishing a firearm during

3     and in relation to a December 11th, 2015, assault with a

4     dangerous weapon and attempted murder, guilty or not guilty?

5               THE DEFENDANT:  Guilty.

6               THE COURT:  Are you, in fact, guilty of that charge?

7               THE DEFENDANT:  Yes.

8               THE COURT:  Are you pleading guilty voluntarily and

9     of your own free will?

10              THE DEFENDANT:  Yeah.

11              THE COURT:  You sound like you're not sure.

12              THE DEFENDANT:  Yeah, I'm guilty.

13              THE COURT:  You're pleading guilty voluntarily and of

14    your own free will?

15              THE DEFENDANT:  Yes.

16              THE COURT:  Nobody's coerced you or threatened you or

17    forced you to plead guilty?

18              THE DEFENDANT:  No.

19              THE COURT:  Because you acknowledge that you're

20    guilty of the lesser included offenses of Count Three and Count

21    Fourteen, because I find you know your rights and are waiving

22    them voluntarily with the understanding of the consequences of

23    your plea, including the potential sentences that may be

24    imposed, and because I find your plea is entered knowingly and

25    voluntarily and is supported by an independent basis in fact

1    containing each of the essential elements of the offense, I

2    accept your guilty plea and adjudge you guilty of those

3    offenses.

4         As I mentioned, the probation office is going to

5    prepare a presentence report to assist me in sentencing you.

6    You'll be interviewed by probation in connection with that

7    report.  You can and should have Mr. Epstein with you during

8    that interview.  If you say anything to probation, it's

9    important that the information you give be truthful and

10   accurate.  The report's going to be important in my decision as

11   to what your sentence will be.

12        You and Mr. Epstein have the right and will have the

13   opportunity to study the report, to challenge it, and to

14   comment on it before I sentence you, so it's important that

15   when the presentence report is issued, you read it over

16   carefully and you discuss it in detail with Mr. Epstein before

17   your sentencing date.  If there are any mistakes, inaccuracies

18   or other issues in the report, make sure you point them out to

19   him so that he can point them out to me before I sentence you,

20   and you and he will also both have the right to speak on your

21   behalf before I impose the sentence.  And the date for that

22   will be...

23        THE CLERK:  January 18th, 2019, at 10:00 a.m.

24        MR. EPSTEIN:  Your Honor, I think I'd prefer a date

25   of February.  I'm starting a trial in front of Judge Pauley in

1    the middle of January, which should go on for at least a month.

2    Realistically on the 18th of January I will be deep into

3    reading 3500 material.

4            THE COURT:  So we're already in the second half of

5    October.  So let's go into February.

6            What's the date for that trial?

7            MR. EPSTEIN:  It's supposed to end on February 15th.

8            THE COURT:  Second half of February?

9            MR. EPSTEIN:  Yes.

10           THE CLERK:  February 26th, 2019 at 3:30 p.m.

11           MR. EPSTEIN:  That's fine, your Honor.  Thank you.

12           THE COURT:  If that trial goes, I'm going to sit full

13   days, but I don't think it's going to go.  So we'll live

14   dangerously, let's leave it where it is.  February 26th at

15   3:30.

16           Mr. Epstein, can you touch base with probation the

17   next couple of days and make sure that interview occurs in the

18   next month?

19           MR. EPSTEIN:  Yes.

20           THE COURT:  And Ms. Kelly, can you make sure the

21   probation gets the prosecution summary within the next couple

22   of weeks?

23           MS. KELLY:  Yes, your Honor.

24           THE COURT:  Can both sides remember to send hard

25   copies of your sentencing submissions to chambers?

                 Angela O'Donnell, RPR, 914-390-4025

1          MR. EPSTEIN:  Yes, your Honor.

2          MS. KELLY:  Yes, your Honor.

3          THE COURT:  I'm going to return Court Exhibit 1 to

4     the government for safekeeping.

5          Anything else we should do this afternoon?

6          MR. EPSTEIN:  No, your Honor.

7          MS. KELLY:  No, your Honor.  Thank you.

8          THE COURT:  Thank you all.

9          MR. EPSTEIN:  Thank you very much.

10          (Proceeding concluded)

11    CERTIFICATE:  I hereby certify that the foregoing is a true and
      accurate transcript, to the best of my skill and ability, from
12    my stenographic notes of this proceeding.
      _____
13    Angela A. O'Donnell, RPR,Official Court Reporter, USDC, SDNY

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT D

190402frazierS                    Sentence

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  -----------------------------x

3  UNITED STATES OF AMERICA

4             v.                          17 Cr. 00364 CS

5  DIAMANTE FRAZIER,

6                  Defendant.

7  -----------------------------x
                                        United States Courthouse
8                                       White Plains, N.Y.
                                        April 2, 2019
9                                       10:05 a.m.

10

11 Before:

12                 THE HONORABLE CATHY SEIBEL,

13                                          District Judge

14                         APPEARANCES

15
   GEOFFREY S. BERMAN
16      United States Attorney for the
        Southern District of New York
17 ALLISON NICHOLS
        Assistant United States Attorney
18
   LLOYD EPSTEIN
19      Attorney for Defendant Diamante Frazier

20

21

22

23

24

25

               SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                            (914)390-4053

190402frazierS                Sentence

1            (In open court)

2            THE DEPUTY CLERK:  In the matter of the United States

3    v. Diamante Frazier.

4            THE COURT:  Good morning, Ms. Nichols, Mr. Epstein,

5    and Mr. Frazier.  You can all have a seat.

6            Let me start by putting on the record what I've

7    received in connection with sentencing.  I have a presentence

8    report, which is dated January 10.  I have Mr. Epstein's

9    memorandum, with attachments, dated February 5.  I have a

10   letter that came directly to chambers from somebody named

11   George Frazier on the letterhead of Hoops Express, Inc.

12           I don't remember if the parties received this.

13           MS. NICHOLS:  I haven't received it, your Honor.

14           MR. EPSTEIN:  I have not.

15           THE COURT:  I think it just came.  No, actually, it

16   came a while ago.  I don't know why we didn't share it with

17   you, but I'll do that right now.

18           I also have the government's letter of February 20,

19   and Mr. Epstein's supplemental submission of yesterday.

20           Is that everything I should have?

21           MR. EPSTEIN:  As far as I know, yes.

22           MS. NICHOLS:  Yes, your Honor.

23           THE COURT:  I'll give you guys a moment to look at

24   that letter.

25           (Pause)

190402frazierS                Sentence

1          THE COURT:  Now, there is one error that the parties

2     agree need to be fixed in the presentence report, and that is

3     on page 29.  I'm going to strike "Frazier shot at a car."

4     Actually, I'll change it to "Frazier's companion shot at a

5     car."

6          MS. NICHOLS:  Perhaps "co-conspirator," your Honor, or

7     "co-defendant"?

8          THE COURT:  "Co-defendant."  That makes it clear.

9          Mr. Frazier, have you read the presentence report?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Have you gone over it with your lawyer?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Mr. Epstein, have you read the report and

14     gone over it with your client?

15          MR. EPSTEIN:  Yes.

16          THE COURT:  And apart from that one issue on page 29,

17     do you have objections to the factual material in the

18     presentence report?

19          MR. EPSTEIN:  No, your Honor.

20          THE COURT:  Does the government have objections to the

21     factual material in the presentence report?

22          MS. NICHOLS:  No, your Honor.

23          THE COURT:  All right.  Then, with that one

24     correction, the findings of fact in the presentence report are

25     my findings of fact.

190402frazierS                Sentence

1           Does the government wish to be heard?

2           MS. NICHOLS:  Just briefly, your Honor.  The Court, I

3  know, is very familiar with this case and has sentenced several

4  of the defendant's co-defendants so far.

5           In short, the defendant's conduct here was not the

6  result of a momentary lapse of judgment, but it was the result

7  of a year's long participation in a violent street gang that

8  engaged in multiple reciprocal retaliatory acts of violence

9  with the other gang that lived just about a mile down the road

10 in Newburgh.  He was also involved in drug dealing for a number

11 of years, and he was carrying guns with his drug dealing.  And

12 in one instance, he sold a gun, along with drugs, to a

13 confidential informant.

14          The government, of course, recognizes that

15 Mr. Frazier's criminal history is less than some of his

16 co-defendants, and that's certainly important for the Court to

17 consider here, but I think that what we do know about his

18 criminal activity and his experiences with the Criminal Justice

19 System so far indicate a troubling trajectory towards greater

20 and more serious conduct, more violent conduct.  And so far,

21 that has not deterred him from continuing down that path.

22          He expresses in his letter remorse and some gratitude

23 that things didn't become worse than they were, and that's also

24 to his credit, but the guidelines here are serious and high,

25 and appropriately so.  So the government is seeking a guideline

                SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
                              (914)390-4053

190402frazierS                    Sentence

1    sentence in this case.

2            With respect to Mr. Frazier's familial support, that

3    is, of course, also important to consider.  There were a number

4    of letters speaking to his character.  Some of the people who

5    wrote these letters, with all respect to them, appear to have

6    less familiarity with the case.  And to refer to this as a

7    momentary lapse in judgment, just to underline something in the

8    government's letter, frankly, the idea that Mr. Frazier's

9    fiancée had no idea what was happening when he was dealing

10   drugs out of the apartment that he shared with her is, frankly,

11   not credible.

12           So, the 3553(a) factors, as they often do, sort of cut

13   in two directions.  And the family support that he apparently

14   enjoys has not been sufficient in the past to prevent him from

15   continuing to engage in this kind of criminal activity.

16           And just the last thing that I'll say, your Honor, is

17   that in addition to the specific acts that Mr. Frazier

18   participated in, including the shooting that happened mid-day,

19   just on a regular residential street where he brandished a

20   firearm and at least his co-defendant shot at the car that then

21   crashed into a tree, in addition to these specific acts of

22   violence and specific instances of drug-dealing, Mr. Frazier

23   bears responsibility for certain atmospheric escalations of the

24   gang warfare here.

25           He was one of Southside's leading rappers, and that

190402frazierS            Sentence

1  may seem like a silly thing to say, but we know from the way

2  that this warfare perpetuated between these two gangs that this

3  kind of online posturing, the Facebook posts, and the rap

4  videos and the taunting of gang rivals over the Internet had a

5  very real and tangible effect that created and led to and

6  heightened the violence between the two gangs, and Mr. Frazier

7  was, frankly, in the thick of that.

8          So, for all of those reasons, the government

9  respectfully submits that a guideline sentence is appropriate

10 here.

11         THE COURT:  Thank you, Ms. Nichols.

12         Mr. Epstein.

13         MR. EPSTEIN:  Thank you, your Honor.

14         We're obviously asking for a sentence below the

15 guidelines, but it's important to remember that even the

16 minimal sentence in this case will be a relatively severe

17 sentence, more than seven years, for a young man who has never

18 served a significant jail sentence before.

19         And to the extent that the punishment is meant to

20 instill a sense of deterrence, I don't think there's any

21 question that seven years in federal custody will have that

22 effect, and that that effect will not be substantially

23 different than a sentence of eight, nine or ten years in jail.

24         When I first met Mr. Frazier, I immediately realized

25 that I was dealing with somebody who was much more complex than

190402frazierS                Sentence

1   many of the clients that I ordinarily deal with.

2          Very, very early on in the case, he sent me a letter

3   with a case that discussed whether selling drugs and a gun

4   together was sufficient to prove using a gun during a drug

5   transaction.  Now, we all know that as the law has developed,

6   it's the case that that is sufficient, but that was not always

7   a clear and decided question.

8          And what impressed me about him when I spoke to him

9   about it is how bright and analytical his mind was.  He made

10  all of the mistakes that a first-year law student made.  He

11  didn't know how to Shepardize the case.  He didn't know the

12  difference between the Western District of Carolina and the

13  Second Circuit, but he showed a level of intelligence, which I

14  thought was much more than many people that I encounter.

15         At the same time, he showed an extraordinary level of

16  immaturity.  When I first started talking to him about what

17  programs he would get involved with – and he was in Valhalla,

18  not at the MDC or the MCC – the conversation always turned to

19  the jail basketball tournament and which of the federal prisons

20  had the best basketball team.  It was a way of completely

21  misunderstanding the situation, the seriousness of what he was

22  in.  And what always struck me was really the conflict between

23  someone who was very, very intelligent and somebody, who, in

24  some sense, seemed very immature.

25         There came a point in which this shifted, that

190402frazierS              Sentence

1   Ms. Ramdeen – his fiancée who is in the courtroom with his

2   mother, his future sister-in-law, who also wrote a letter to

3   the Court and other family relatives – she described the time

4   that he started talking about getting his CDL, a commercial

5   driver's license.  When I received that letter, I was struck

6   because I had the same conversation with him.  He started

7   talking to me about what he was going to be doing six or seven

8   years down the line.

9          And he started taking the courses at Valhalla, which,

10  frankly, are not the same types of things that are offered at

11  the MDC, MCC.  And I think that, to his credit, he pursued

12  everything that he could.  I think it's important to remember

13  that the atmosphere in Valhalla is not the same as the MCC or

14  MDC.

15         Certain things everyone in the city knows.  Every

16  prisoner knows that if you get a lot of certificates, you

17  present them to the judge, and maybe that will help you get a

18  reduced sentence.  It's not the atmosphere in Valhalla.  It's a

19  completely different world there.  And to Mr. Frazier's credit,

20  he pursued it.

21         I want to talk a little bit about why there's good

22  reason to believe that Mr. Frazier is not going to be involved

23  in further criminal activity.  I think that the factual

24  objection that we made, which the Court just made, is more

25  significant, or at least is very significant, more significant

190402frazierS                Sentence

1    than many factual changes that are made; that when people are

2    involved in crimes, there are various gradations; that it takes

3    a certain mentality to possess a gun, a certain mentality to

4    brandish a gun, but it takes something completely different to

5    shoot a gun.

6          And there was a moment where Mr. Frazier was in the

7    car with Skylar Davis, and Skylar Davis shot the gun.

8    Mr. Frazier held the gun, he brandished it, but it was a moment

9    of truth in which the element of his conscience or his basic

10   decency came to the fore and he didn't shoot the gun.

11         Now, I'm not in any way suggesting this makes him a

12   hero or somebody that people should look up to, but when the

13   Court is considering the difference between a seven-year

14   sentence versus an eight- or nine-year sentence, I think it

15   does tell us something about Mr. Frazier's basic character.

16         I also think, your Honor, that the fact that his

17   fiancée and her family are willing to wait for Mr. Frazier

18   tells you a lot about Mr. Frazier, and something about them.  I

19   spent a lot of time during the last two years talking to

20   Ms. Ramdeen.  I found it was easier than going to Valhalla all

21   the time as a way of getting more information about

22   Mr. Frazier.  And frankly, even when she told me she was going

23   to marry Mr. Frazier, I was still somewhat sceptical.  Was this

24   a bright-eyed, open-eyed, dreamy-eyed young woman, or was it

25   somebody who was really grounded in reality?

190402frazierS                Sentence

 1          So I asked her, what does the rest of her family think

 2     about this.  And we talked about her father who works in

 3     accounting, who is a very, very upstanding citizen, and he

 4     wrote me a letter saying that he has confidence in Mr. Frazier,

 5     as well.  Her sister has confidence in Mr. Frazier.  And I

 6     think that should give the Court some measure of confidence

 7     that things will work out for Mr. Frazier, along with, of

 8     course, the stated ambitions that he has -- that he has

 9     expressed.

10          Finally, your Honor, the government makes an argument

11     that the family's view and Ms. Ramdeen's view should be

12     discounted because they were not able to prevent Mr. Frazier

13     from getting involved in criminal activity, and it's a fairly

14     faulty argument.  I think we all know that people are very

15     complex, and when young people are in love, they tend to see

16     everything that is good and try to rationalize what's bad.

17          And I think the idea that now the situation hasn't

18     changed, now that Mr. Frazier is going to spend at least seven

19     years in prison is, frankly, ridiculous.  It's something that

20     has an impact on Mr. Frazier, it has an impact on the family,

21     and I think all of this bodes well for the future.

22          Finally, your Honor, we're talking about a relatively

23     small range of possible sentences.  Realistically, we're

24     talking about something going from seven years to something at

25     the top of the guidelines is 11 years.  But what I suggest,

190402frazierS            Sentence

1   your Honor, is that the impact on Mr. Frazier and on his

2   family, and the possibility of his becoming an upstanding

3   citizen, is much greater, the additional two years or three

4   years will have a much greater negative impact on him than the

5   positive impact of getting the word on the street that if you

6   belong to a gang, you're going to get a significant sentence.

7           Everybody will know that Mr. Frazier has gotten a

8   sentence of at least seven years here in this case, no matter

9   what the Court decides, which is a highly significant sentence

10  for somebody whose previous criminal record involved relatively

11  not serious misdemeanors.

12          THE COURT:  Let me just interrupt you on the math.

13          The high end of the range by my count is almost 12

14  years.  I come out to 130 is the low end, which is almost 11

15  years; and 141 is the high end, which is almost 12.

16          MR. EPSTEIN:  I think we agree on the numbers.

17          THE COURT:  46 to 57, plus 84.

18          MR. EPSTEIN:  Plus 84.  Correct, your Honor.

19          THE COURT:  So, we're between the high end of the

20  range and the mandatory minimum is 84, and the high end is 141.

21          MR. EPSTEIN:  I think we agree on the numbers, your

22  Honor.

23          THE COURT:  Okay.

24          MR. EPSTEIN:  I think that is clear.

25          Under any circumstances, your Honor, the difference

190402frazierS            Sentence

1    between a sentence close to 12 years as opposed to a sentence
2    of close to seven years, I think will have a minimal impact in
3    getting the word on the street, but it will have an
4    unnecessarily negative impact on Mr. Frazier and on his family.
5    Therefore, I'm asking the Court to impose a sentence very, very
6    close to the mandatory minimum.

7            THE COURT:  Thank you, Mr. Epstein.

8            Mr. Frazier, if there's anything you'd like to say,
9    I'll hear you now.

10           MR. EPSTEIN:  Your Honor, should he stand up or sit?

11           THE COURT:  It's all right with me if you want to sit.
12   Just pull the mic. so that it's in front of you.

13           THE DEFENDANT:  Your Honor, I would like to apologize
14   to my community for the guns that I sold.  I realize how
15   serious firearms can be when anybody possesses them.  I would
16   also like to apologize for the drugs I sold.

17           Looking back, I realize how selfish, stupid and lazy I
18   was.  I only thought about how quick I could make money and not
19   the impact drugs had on people's lives.  I let a lot of people
20   down who invested in me because of what I associated myself
21   with.

22           God has opened my eyes up to so many things during
23   this journey, and I'm truly blessed to be the person I am
24   today.  I'm no longer afraid to grow up and change the mindset
25   that a lot of people from my community have.

190402frazierS              Sentence

1           And 22 months ago, when I first was in your courtroom,

2    I'm not the same person as I am today due to the circumstances

3    I'm facing.

4           I have no intentions on being in a group nor on the

5    streets when I get home.  I would like to thank my mother and

6    fiancée for sticking by me during this time.  And they

7    motivated me to use the experience as a wake-up call, and I

8    vowed to them to never let them down again after this.  And

9    this is something I never wanted to put them through or myself

10   through again, and this is the last time I'll be in anyone's

11   courtroom.

12          Thank you.

13          THE COURT:  Thank you.

14          I have to start with the Sentencing Guidelines.  They

15   are only advisory, but they're a starting point.  They only

16   require a calculation for the drug count because there's a

17   mandatory minimum of seven years consecutive on the gun count.

18          The basis offense level for the drug count is 24.  Two

19   levels are added because the defendant possessed a firearm in

20   connection with the narcotics conspiracy.  The 924(c) count is

21   related to an assault, so it doesn't preclude the application

22   of the two levels to the drug count, so the adjusted offense

23   level is 26.  Three levels are subtracted for the defendant's

24   timely acceptance of responsibility.  And the adjusted offense

25   level is 23.

190402frazierS                Sentence

1          The defendant has two prior convictions: one is a drug

2    misdemeanor from 2016, where he got probation, despite having

3    50 bags of heroin on him and fleeing from the police; however,

4    he violated his probation, and that was revoked, and he served

5    90 days.  Ordinarily, that would result in two criminal history

6    points, but, because it was part of the offense of conviction,

7    it doesn't result in any criminal history points.

8          And he has a conviction for a false personation.  When

9    he was caught with several bags of weed, he gave a false name.

10   That resulted in a conditional discharge; also, no criminal

11   history points.  It's not clear whether he's going to be

12   violated based on the instant conduct.

13         He has no criminal history points.  He's in Criminal

14   History Category I.  And the sentencing range for the drug

15   count is 46 to 57.  When you add in the mandatory seven

16   consecutive, the guidelines range is 130 to 141 months.

17         Probation is recommending the low end of that range,

18   130 months, which is seven and-a-half years -- no, ten years

19   and ten months.  It's almost 11 years.

20         Whether I should sentence within, above or below that

21   range turns on the 3553(a) factors.  The first is the nature

22   and circumstances of the offense.  This is an extremely serious

23   offense.  I have had far too many occasions to say this,

24   dealing drugs is bad enough, but doing it as part of a violent

25   gang is so much worse.

190402frazierS                 Sentence

1          This defendant not only did his drug dealing in

2     coordination with a violent gang, therefore, capitalized on its

3     reputation, but he was a big part of why it had that

4     reputation.

5          He was not what we sometimes see, which is somebody

6     who is just an opportunist and takes advantage of the fact that

7     he can align himself with a gang to make more money as a drug

8     dealer.

9          This defendant, from what I can tell, loved being in

10    the gang, boasted about it, bragged about it, enjoyed the

11    ratcheting up of the rivalry with the other gang, didn't think

12    twice about the violence, toted a gun, even sold one, and

13    didn't give any thought to the danger he was putting himself in

14    or the danger he was bringing on his community.  So, it would

15    be an extremely serious offense even if the defendant were not

16    involved in the encounter, I'll say, with YTMG in which he

17    didn't fire his gun, thank God, thank God, but he brandished

18    his gun during a shootout.  And it's just dumb luck that he

19    didn't -- that nobody got killed, either in the other car from

20    the other gang or just walking on the street.  If that were the

21    case, we wouldn't be talking about, Well, should it be 7 or 10

22    or 12, we'd be talking about should it be 25 or 30 or life?

23    And that is just pure luck.

24         And the defendant did not regard this as a close call

25    or a wake-up call or say, Wow, thank God nobody got killed, I

190402frazierS              Sentence

1    need to change my life.  Instead, he boasted about the rivalry

2    and continued to ratchet it up online.

3          Dealing drugs is bad.  Dealing drugs with a gun is

4    bad.  Dealing drugs as part of a violent gang is bad.  And

5    being an enthusiastic member who glorifies the violence of that

6    gang is bad, so this is a bad offense.

7          The history and characteristics of the defendant, we

8    have some positives.  I have letters from people who think

9    Mr. Frazier is a good guy.  I cannot imagine that they are so

10   ignorant of what he's been doing with his life that they

11   weren't fully aware that he was dealing drugs and a member of

12   Southside.  I don't see how one could bury one's head in the

13   sand that deep.  You've got to start wondering when the person

14   you're talking about doesn't work, and has money, and hangs out

15   on the street, and you know who his friends are.  Obviously,

16   everybody knew what Mr. Frazier was up to.  So, the fact that

17   they're still behind him could mean that they're completely

18   amoral people, but I don't think that's what it means.  I think

19   what it means is that there's some good in him, and that's to

20   his credit.  Also to his credit is what he said today and in

21   his letter, where he seems to have some insight that he didn't

22   have up until the time he got arrested.

23          Almost all of the other factors that we look at do not

24   bode as well.  The defendant graduated the high school but then

25   never did anything with his life.  He enrolled in Orange

190402frazierS              Sentence

1    Community College, but he earned almost no credits.  And he has

2    worked minimally on temporary jobs, which he doesn't even hold.

3    And it's clear to me he was making his living dealing drugs.

4              He had challenges in his childhood, no doubt.  His

5    father set a really bad example.  And even though his mother

6    worked, they were in a neighborhood where drugs and guns and

7    violence were rampant; although, he didn't experience any abuse

8    in his home, and his basic needs were met.

9              There was a time where Child Protective Services was

10   involved, but the presentence report wasn't able to track down

11   what was going on there, except that, happily, the defendant

12   was treated well during his time in foster care and then went

13   to live with his grandmother who he also liked living with, and

14   he eventually came back here to live with his mother.  So, all

15   of that could not have been easy.

16             And he also had some struggles in school, but he

17   managed to graduate, and he was not accused or neglected as far

18   as I can tell, like so many defendants who I see here are.  He

19   basically got high all day, every day, and when he had

20   treatment, he flunked out.  Well, he got arrested, so he didn't

21   complete the program, but he was not abstaining during the

22   program.

23             So, what we have I think is a picture of somebody who

24   everybody around him knew was committing crimes and getting

25   high and doing some very antisocial and dangerous and

190402frazierS            Sentence

1   destructive things.

2           According to the government, he was dealing drugs out

3   of the apartment where his fiancée lived, putting her in

4   jeopardy.  She and her family should be grateful that she's not

5   a co-defendant.  So, it does leave you wondering why are they

6   sticking by this man.  He put not just their whole community in

7   danger, but their loved ones in danger.

8           Just by being a member of this gang, walking down the

9   street next to Mr. Frazier, you're in danger because he's

10  taunting the other gang and he's inviting violence against

11  himself.  And so, literally, just walking down the street with

12  him, you're in danger, but when he's committing crimes out of

13  your home, you're really in danger.  They see something in him,

14  notwithstanding that they have every reason to leave him

15  behind.

16          And although they absolutely must have known what he

17  was up to and were ineffective in getting him to stop, if they

18  tried to get him to stop, he does seem to feel remorse for what

19  he's putting them through, or at least he's grateful that he

20  hasn't been dumped, which is to his credit.

21          I have to consider the need for the sentence imposed

22  to reflect the seriousness of the offense.  I've already talked

23  about that.

24          I have to consider promoting respect for the law.  I

25  hope that that has occurred since the defendant is looking at a

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

190402frazierS              Sentence

1   significant sentence.

2          I have to consider deterrence, not just Mr. Frazier,

3   but people in the community.  And they know who the crazy,

4   violent shooters are, and they know who the sort of low-level,

5   marginally involved people are, and they know who the

6   enthusiastic members are.  And they need to see that the

7   enthusiastic members get more time than the minor players and

8   less time than the active shooters, so I do take that into

9   account here.

10         Protecting the public is an issue, given the danger --

11  given the nature of the offenses and the fact that the

12  defendant, after getting a break after his first arrest,

13  continued – and after his second – both times, while under a

14  Criminal Justice Sentence, continued committing crimes.

15         I have to consider the guidelines and the need to

16  avoid unwarranted disparities.  I have considered all of the

17  3553(a) factors, even the ones I haven't specifically

18  discussed.

19         The guidelines range here is completely reasonable;

20  one could argue even a higher sentence than that for this

21  conduct would be reasonable.  But what's reasonable is not the

22  question.  The question is, what's the lowest sentence I can

23  impose that is sufficient to serve the purposes of sentencing

24  without being greater than necessary.

25         Largely because he seems to have shown some insight

190402frazierS            Sentence

1    and because I want to encourage that, I'm going to go below the

2    guidelines, but not nearly as much as Mr. Epstein has

3    suggested.  This conduct is just too serious, too lengthy, and

4    too destructive for me to go as low as the defendant suggests.

5    But I do feel that this defendant, given his intelligence and

6    the insight that he seems to be showing, does have the ability

7    to straighten out his life.

8             So, I'm going to go below the recommended sentence and

9    impose a total sentence of 120 months, which will be 84 months

10   on Count Two, to run consecutive to 38 months on Count One.

11            Actually, I think I might have the count numbers

12   wrong.  Count Three will be 38 months.  Wait.  My math is

13   wrong.  It's 36 months.  It's 36 months on Count Three, to be

14   followed by 84 months on Count Fourteen, to run consecutive for

15   a total of 120 months.  And that's going to be followed by

16   three years of supervised release on Count Three and four years

17   supervised release on Count Four, to run concurrent for a total

18   of four years.

19            Supervised release will be on the following

20   conditions.  And I know probation is recommending five, but I

21   think four will be enough for us to know whether Mr. Frazier is

22   on the right track or not.  The following conditions are

23   mandatory.  The defendant will not commit another federal,

24   state or local crime.  He will not unlawfully possess a

25   controlled substance.  He'll refrain from any unlawful use of a

190402frazierS            Sentence

1    controlled substance.  He'll submit to one drug test within 15

2    days of release from imprisonment and at least two more

3    thereafter.  He'll cooperate in the collection of DNA as

4    directed by the probation officer.

5           He'll comply with the standard conditions of

6    supervision 1 through 12, along with the following special

7    conditions.  He'll participate in an outpatient -- hold on one

8    second.  He'll participate in an outpatient drug treatment

9    program as approved by the probation office, which may include

10   testing to determine whether he's reverted to using drugs or

11   alcohol.  He'll contribute to the cost of services rendered

12   based on ability to pay or the availability of third-party

13   payment.  I authorize the release of any evaluations and

14   reports, including the presentence report, to the substance

15   abuse provider.

16          The defendant will submit his person and any property,

17   residence, vehicle, papers, computer, other electronic

18   communication or data storage devices or media and effects to

19   search at any time, with or without a warrant, by any law

20   enforcement or probation officer with reasonable suspicion

21   concerning violation of a condition of supervised release or

22   unlawful conduct by the defendant and by any probation officer

23   in the lawful discharge of the officer's supervision functions.

24          I recommend that the defendant be supervised by his

25   district of residence.

190402frazierS                Sentence

1          I'm imposing the mandatory $100 special assessment on

2     each count for a total of $200, which is due immediately.

3          I'm not imposing a fine based on inability to pay.

4          Does either lawyer know of any legal reason why the

5     sentence I've described should not be imposed?

6          MS. NICHOLS:  Judge, for the record, I may have

7     misheard, but I heard you say four years on Count Four, and I

8     think it's Count Fourteen that you meant four years for, for

9     supervised release before.

10          THE COURT:  You are quite right.  Thank you.

11          MR. EPSTEIN:  No objection.

12          THE COURT:  All right.  Then the sentence I've

13    described is the sentence I impose.  It's the sentence I find

14    sufficient, but not greater than necessary, to serve the

15    purposes of sentencing.

16          Mr. Frazier, you have the right to appeal your

17    conviction and sentence, except to the extent you've given up

18    that right through your guilty plea or your plea agreement.  If

19    you think you have grounds to appeal and you're unable to pay

20    the costs of an appeal, you can apply for permission to appeal

21    without paying.  Any notice of appeal must be filed within 14

22    days of entry of the judgment of conviction, and Mr. Epstein

23    will assist you with that.

24          Are there open counts?

25          MS. NICHOLS:  Yes, your Honor.

190402frazierS                    Sentence

1              THE COURT:  What are they?

2              MS. NICHOLS:  The underlying indictments, your Honor.

3    We'll move to dismiss those at this time.

4              THE COURT:  The underlying indictments are dismissed

5    as to this defendant.

6              Mr. Frazier, I know this is a long time.  It could

7    have been longer.  I went below the guidelines and below the

8    recommended sentence because I think, unlike a lot of people I

9    see, you do have the brains to straighten yourself out.

10             I couldn't go as low as you wanted because what you

11   did is just too serious, but I hope that you'll use your time

12   inside productively, whether that's a job or taking courses.  I

13   hope it is a job.  I hope you learn the satisfaction of doing

14   an honest day's work and getting an honest day's pay.

15             And you're still going to be young when you get out.

16   You're not a kid anymore, and it's good that you want to put

17   this all behind you.  You're going to have many decades of life

18   ahead of you when you get out.  And you're lucky that you're

19   going to have a fiancée or a wife waiting for you.  Most people

20   don't.

21             So, I really, really, really hope I don't see you

22   again.  You're going to be on supervised release.  It's not the

23   same as state parole.  The probation officers here really want

24   to help you stay on track.  They feel like they've failed if

25   they have to violate you.

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

190402frazierS                Sentence

1          So, when you get out, I hope you don't have the

2    attitude that the probation officers are a problem.  They're

3    here to help you.  They can help you get a job.  They can help

4    you find housing.  They can help you go to school if that's

5    what you want to do.  If you find yourself slipping back into

6    your old ways, they can help you stay on track.

7          So, I hope you'll regard them as support for you as

8    you straighten out your life, which you say you want to do.

9    And you recognize that you let the people behind you down.  And

10   I hope that everything you said today is going to stay in the

11   front of your mind while you finish your time and after you get

12   out.

13         The best thing that can happen is we don't see each

14   other again, because that means you've completed your

15   supervised release, you're back on track, you're living a good

16   life as a free person, a free, law-abiding person.  So I wish

17   you luck.

18         Anything else we should do this morning?

19         MS. NICHOLS:  There are open counts in the S4, too.

20   We would just like to move to dismiss all the open counts.  I

21   think it's Count One in the S4 and Count Two he's also charged

22   in, as well as the underlying indictments.

23         THE COURT:  Okay.  Counts One and Two in the S4, as

24   well as the underlying indictments, are dismissed as to this

25   defendant.

190402frazierS                 Sentence

1            Thank you.

2            MS. NICHOLS:   Thank you.

3            MR. EPSTEIN:   Thank you.

4            He'll be designated as close to Orange County as

5   possible?

6            THE DEPUTY CLERK:   It will be in the judgment.

7                 - - -

8   Certified to be a true and correct

9   transcript of the stenographic record

10  to the best of my ability.

11  _____

    U.S. District Court
12  Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25

                 SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                                 (914)390-4053